**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-00498-WJM

DAVID B. HOECK,

      Applicant,

v.

RAE TIMME, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on Applicant David B. Hoeck's *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction and sentence imposed in the Mesa County, Colorado, District Court. Remaining for disposition are Applicant's first through eleventh claims asserted in the Application. Respondents have filed an Answer and Applicant has filed a Reply. Having considered the same, along with the state court record, the Court concludes that the Application should be denied.

**I. Background**

On February 13, 2008, Applicant was convicted by a jury of contributing to the delinquency of a minor, obstructing a peace officer, and harboring a minor in Mesa County District Court Case No. 07CR1604. [Doc. # 13-1, at 3].

The following summary of relevant facts is taken from the Colorado Court of Appeals' decision in *People v. Hoeck* (*Hoeck I*), No. 08CA1133 (Colo. App. Aug. 27,

2009) (unpublished decision):

Officers arrived at [Applicant's] house looking for D.S., a juvenile who had run away from her parents' home. The officers had received a call from D.S.'s father, who suggested that she might be at [Applicant's] house.

As they approached the house, the officers saw three teenagers leaving. One of the teenagers, C.D., told them that [Applicant] was inside the house, but that she did not know if D.S. was there. C.D. then went into the house to see if D.S. was there.

From outside the house, the officers heard a commotion and, through an open window, could see several people inside the house. As the officers announced their presence and asked the people to open the door, dispatch informed them that D.S. was inside the house and on the phone with her father.

When the officers contacted D.S. through the open window, she told them that she wanted to leave, but that [Applicant] had barricaded the front door. Eventually, D.S. and three other juveniles left the house by crawling through the open window.

The officers interviewed three of the juveniles who left [Applicant's] residence, D.S., C.D., and B.S. All three girls were fifteen years old at the time of trial. During her interview, D.S. denied smoking marijuana in [Applicant's] house. The interviewing officer noticed that D.S. had red eyes, but did not know if this was caused by crying or by something else. At trial, D.S. admitted that she "smoked a little weed" with C.D. and B.S. at [Applicant's] house. She testified that [Applicant] was in his bedroom when she and the other juveniles smoked marijuana in his living room.

The officer who interviewed C.D. observed that her eyes were bloodshot and watery, and that she emitted "an odor of marijuana." During the initial interview, C.D. admitted to the officer that she had smoked marijuana in the living room with D.S., B.S., and [Applicant].  At trial, however, C.D. testified that she smoked marijuana with D.S., B.S., and another juvenile, but stated that [Applicant] did not smoke marijuana with them. She testified that [Applicant] was in his bedroom while the juveniles smoked marijuana, and she denied having told the officers otherwise.

The officer who interviewed B.S. testified that her eyes were glassy and her tongue was green and pasty with blisters toward the back, consistent with marijuana use. He also testified that B.S. admitted to him that she had smoked marijuana earlier that evening with D.S., C.D., and

2

several other juveniles, and that [Applicant] was present in the same room while they smoked. At trial, however, B.S. denied that [Applicant] was in the same room where she and the others were smoking marijuana. She testified that [Applicant] was either in his bedroom or outside while she and the others smoked in the house.

Before trial, [Applicant] filed a motion with the court, asserting that he was not being effectively represented by the public defender's office. He requested that the court appoint alternate defense counsel. The trial court denied his motion, stating that it did not accept pro se filings from defendants while they were being represented by counsel. It also found that [Applicant's] motion did not state any grounds that would justify granting it. On the first day of trial, defense counsel made a record of [Applicant's] dissatisfaction with his representation. Defense counsel told the court that he was prepared for trial and that he would continue to represent [Applicant]. [Applicant] told the court that he, too, was prepared to go to trial.

Following the determination of [Applicant's] guilt, the trial court sentenced him to six years in prison.

[Doc. # 13-2, at 2-5].

The Colorado Court of Appeals affirmed Applicant's convictions on direct appeal. [*Hoeck I*, Doc. # 13-2]. The United States Supreme Court denied his request for certiorari review on October 6, 2003. [Doc. # 13-6].

Applicant filed a motion for reconsideration of sentence pursuant to Colo. Crim. R. Crim. P. 35(b) on January 7, 2010, which was denied by the state district court on January 11, 2010. [Doc. # 13-1, at 7].

Applicant filed a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c) on November 19, 2010, which was denied by the state district court on December 30, 2012. [*Id.*]. The Colorado Court of Appeals affirmed the trial court's order in *People v. Hoeck* (*Hoeck II*), 11CA0232 (Colo. App. May 24, 2012). [Doc. # 13-3]. The Colorado Supreme Court denied Applicant's petition for certiorari review on January 28,

2013.  [Doc. # 13-9].

Applicant initiated this action on February 25, 2013.  He asserts the following claims in the Application:

1)  There was insufficient evidence to support his conviction for contributing to the delinquency of a minor. [Doc. # 1, at 2-3].

2)  His Sixth Amendment right to counsel was violated by the trial court's failure to inquire into his dissatisfaction with appointed counsel. [*Id.* at 3-4].

3)  Trial counsel was ineffective in failing to interview and present at trial witnesses whose testimony would have impeached the testimony of prosecution witnesses. [*Id.* at 4-6].

4)  Trial counsel was ineffective in failing to "investigate" Applicant's competency to stand trial in light of his past traumatic head injuries. [*Id.* at 6-7].

5)  Trial counsel was ineffective in failing to "explore other viable avenues of defense," specifically: (a) Applicant's "state of mind and competency at the time of the alleged defense and during trial"; (b) questions raised by "alibi and corroborating defense witnesses"; and, (c) evidence relating to an alternate suspect. [*Id.* at 7-9].

6)  Trial counsel was ineffective in failing to review discovery with Applicant and to keep him informed about the progress of the case. [*Id.* at 9-10].

7)  Trial counsel was ineffective in failing to "consult with expert witnesses in relation to [Applicant] suffering from PCS, PTSD, and agoraphobia." [*Id.* at 10-12].

8)  Trial counsel was ineffective in failing to move to exclude testimony that Applicant did not open his front door for the police and had juveniles exit his home through a window when the police arrived.  [*Id.* at 8-14].

9)  Trial counsel was ineffective based on the cumulative prejudicial effect of counsel's errors.  [*Id.* at 14].

10)  The trial court "erred" by allowing the state to introduce, at trial, testimony that Applicant refused to open the door of his home for police officers.  [*Id.* at 14-15].

11)  Appellate counsel was ineffective in failing to seek certiorari review in the Colorado Supreme Court on direct appeal.  [*Id.* at 15-16].

12)  The district court "abused its discretion" by denying Applicant's post-conviction motion on the basis that he failed to state facts entitling him to relief; and the Colorado Court of Appeals "substantially erred" by affirming that ruling on appeal.  [*Id.* at 16-18].

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  In the preliminary response, Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). [Doc. # 13, at 6].  Respondents further conceded that Applicant exhausted claims three through eleven of the Application as federal constitutional issues in the state courts.

In a previous Order, the Court rejected Respondents' argument that Applicant failed to exhaust state remedies for claims one and two and found those claims exhausted.[1]  Respondents also argued, and the Court agreed, that claim twelve of the Application failed to present a federal constitutional claim that was cognizable on federal habeas review.[2]  The Court thus dismissed claim twelve.[3]  The Court reviews the merits of claims one through eleven below.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

---

[1]*See* Doc. # 13, at 14-16; # 18, at 6-7.

[2]*See* Doc. # 13, at 17; # 18, at 8.

[3]*See* Doc. # 18, at 8.

issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003). The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme court

at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390

(2000). Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case sub judice.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at

1018. If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
> 407–08. Additionally, we have recognized that an unreasonable

> application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting

*Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**III.  Legal Analysis**

**A.  Claim One**

For his first claim, Applicant asserts that there was insufficient evidence to

support his conviction for contributing to the delinquency of a minor. [Doc. # 1, at 2-3].

A habeas petitioner's constitutional challenge to the sufficiency of the evidence is

governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support

a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in the original). The court considers both direct and circumstantial evidence in determining the sufficiency of the evidence. *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998). The court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, the court looks to state law to determine the substantive elements of the offense. *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). Under Colorado law, a person commits the crime of contributing to the delinquency of a minor when that person:

> induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits contributing to the delinquency of a minor. For the purposes of this section, the term "child" means any person under the age of eighteen years.

COLO. REV. STAT. ("C.R.S.") § 18-6-701 (2012).

Applicant argues that the prosecution did not present any evidence that he "aided, abetted or encouraged the juveniles to break the law by possessing marijuana." [Doc. # 1, at 3]. He maintains that his presence in a residence with juveniles who were smoking marijuana does not establish the elements of the offense because he was in a separate room. [*Id.*].

The Colorado Court of Appeals applied a state law standard similar to the

*Jackson* standard [*see Hoeck I*, Doc. 13-2, at 5-6], and rejected Applicant's claim on the

following grounds:

> [Applicant] argues that the evidence was insufficient to support the jury's finding that he knew the children possessed marijuana, and thus the trial court erred by denying his motion for judgment of acquittal. We disagree.
>
> . . .
>
> [Applicant] was charged with two counts of contributing to the delinquency of a minor based on the allegation that he induced, aided, or encouraged D.S. and C.D. to possess marijuana. *See* § 18-18-406, C.R.S. 2008 (prohibiting the possession of one ounce or less of marijuana). A person is guilty of contributing to the delinquency of a minor under section 18-6-701(1), C.R.S. 2008, when he or she knowingly "induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order." *Gorman v. People*, 19 P.3d 662, 665 (Colo. 2000). A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. § 18-1-501(6), C.R.S. 2008. Thus, a jury could find that [Applicant] acted "knowingly" in contributing to the delinquency of a minor if it found that he was aware that he was inducing, aiding, or encouraging D.S. and C.D. to possess marijuana.
>
> [Applicant] does not dispute that D.S. and C.D. smoked marijuana in his living room. He argues, however, that he was not in the same room when they were smoking marijuana, and thus, even if he was at home at the time, the evidence did not establish that he knowingly aided, abetted, or encouraged them to break the law by possessing marijuana. He reasons that he could not have supervised or controlled "what activities went on in his home at all times."
>
> The prosecution and defense presented conflicting evidence regarding [Applicant's] presence while the juveniles smoked marijuana. At trial, D.S., C.D., and B.S. testified that [Applicant] was not present in the living room when they smoked marijuana, and that he was either in his bedroom or outside. However, on the night of the incident, all three juveniles told police officers that [Applicant] was present in the living room while they smoked marijuana.
>
> The trial court allowed the prosecution to introduce the juveniles' prior inconsistent statements under section 16-10-201, C.R.S. 2008. A witness's previous inconsistent statement is admissible under that statute

for establishing the truth of a fact if (1) the witness, while testifying, is given an opportunity to ex or the witness is still available to give further testimony; and (2) the previous inconsistent statement purports to relate to a matter within the witness's own knowledge. § 16-10-201. Here, all three juveniles testified and were given opportunities to explain or deny their statements to the police officers, and their previous inconsistent statements related to a matter within their knowledge. Thus, their previous statements that [Applicant] was present when they smoked marijuana were admissible for their truth and were proper for the jury to consider in determining whether [Applicant] was present in the living room while the juveniles smoked marijuana.

> Here, the evidence, viewed as a whole and in the light most favorable to the prosecution, was sufficient to support the jury verdict finding [Applicant] guilty of contributing to the delinquency of a minor. *See Gonzales*, 666 P.2d at 127. The prosecution presented evidence that [Applicant] not only was present in the room while the juveniles smoked marijuana, but also smoked it with them. This evidence supports a finding that [Applicant] was aware of the nature of his conduct; that, by participating, he encouraged the juveniles to use and possess marijuana; and that he provided a safe haven for them to possess and use marijuana. *See People v. Villapando*, 984 P.2d 51, 54 (Colo. 1999) (use of a drug necessarily implies its possession, because "it is simply not feasible for an individual to voluntarily use a controlled substance without also possessing it").

[*Id.* at 5-9].

The state court's factual findings, which are presumed correct in this federal

habeas proceeding, are supported by the state court record,[4] and are unrebutted by

Applicant.  Viewed in a light most favorable to the prosecution, a rational jury could have

concluded beyond a reasonable doubt that Applicant "induce[d], aid[ed], or

encourag[ed]" the juveniles present in his home to smoke marijuana, which was illegal.

The Court therefore finds that the state appellate court's determination that there was

sufficient evidence presented at Applicant's trial to support his conviction for contributing

to the delinquency of a minor was consistent with federal law.  Applicant's first claim is

---

[4]*See* State Court R., 2/11/08 and 2/12/08 Trial Transcripts.

without merit.

**B.    Claim Two**

Applicant asserts in claim two that his Sixth Amendment right to counsel was

violated by the trial court's failure to inquire into his dissatisfaction with appointed

counsel.  [Doc. # 1, at 3-4].

The following facts, taken from the Colorado Court of Appeals' decision on direct

appeal of Applicant's conviction, are relevant to claim two:

> Here, while represented by the public defender, [Applicant] filed a
> pro se Motion for Ineffective Assistance of Counsel. In this motion,
> [Applicant] asked the court to appoint him "counsel not of the public
> defender's office," stating, "[T]he public defender's office does not want to
> do as I have requested on several different matters." He gave the
> following reasons for his request:
>
>> I told my attorney when he went over discovery with me that
>> police violated the law and he said they didn't without [even]
>> checking into it. I asked for copies of affidavit [sic] in support
>> of search warrant, search warrant[,] and discovery[,] and he
>> refused to tender them to me. I asked him to subpeona [sic]
>> witnesses to preliminary hearings and he refused to do so.
>> At preliminary hearings I asked to ask questions of
>> witnesses and he would not follow my instructions. I asked
>> him to file certain motions and he wrote me back stating[,] "I
>> will evaluate your cases to determine which motions I intend
>> to file." He will not follow any of my instructions and it is my
>> life, my liberty[,] and my pursuit of happiness that is left
>> hanging.
>
> In an order denying [Applicant's] motion, the court refused to
> appoint [Applicant] new counsel, stating, "The Court does not accept pro
> se filings from defendants who are represented by counsel. Furthermore,
> [Applicant's] motion fails to state any grounds that would justify the relief
> he is seeking." (Emphasis in original.)
>
> On the first day of trial, before calling the jury in, the court
> addressed [Applicant's] concerns about defense counsel. The following
> discussion took place:

[Defense counsel]: Also, Your Honor, [Applicant] is still unsatisfied with my representation. I know he's not very happy at all. He's -- he refused to meet with me on Saturday.

[Applicant]: Well, it's the Sabbath, Your Honor, I keep the Sabbath, and I've told him that from the beginning. And he wants to come twice on the Sabbath. I met with him once on a Sabbath and I confronted him about it and I told him I keep the 7th day Sabbath, and he still wanted to come down again on the Sabbath. And it says I can't work on the Sabbath or have people work for me on the Sabbath. And he wants to go against my religious beliefs. That's – that's the problem with him.

[The court]: All right [sic]. Go ahead. Thanks.

[Defense counsel]: Just to add to that, I didn't have the perception that he had an objection to me visiting with him on the Sabbath, on his Sabbath. I do respect his religious beliefs.

[Applicant]: It's not mine. It's God's.

[Defense counsel]: Also, but I still – he – [Applicant] still is very unsatisfied with my representation. I feel like I am prepared for trial and I will continue to represent him.

[Applicant]: I'm prepared to go to trial, too, Your Honor. I'm ready to go right now.
. . . .

[The court]: [Applicant], are you dissatisfied with [defense counsel]? You said you're ready to go —
. . . .

[Applicant]: That's evident, Your Honor. I wrote you on that before. That's okay. I'm ready to go.

[The court]: Okay. Sounds like you're ready to go to trial. You're going to be able to cooperate with [defense counsel] during the trial and —

[Applicant]: I don't know what he needs my cooperation for. He says it's his – the ball's in his court. He's going to run it the way he wants to, so —

[The court]: All right [sic]. Well, normally he'll consult you about the decisions during the trial.

[Applicant]: He . . . hasn't done it thus far, so we'll see.

[The court]: Okay. It sounds like you have a pretty good attitude this morning about you're ready to go to trial —

[Applicant]: Absolutely, Your Honor.

After the trial was completed, but before sentencing, [Applicant] again raised his dissatisfaction with defense counsel. Upon defense counsel's motion, the trial court held a hearing to inquire into [Applicant's] concerns. At the hearing, [Applicant] argued that counsel (1) had not called certain witnesses; and (2) had not investigated [Applicant's] medical records. When the court asked [Applicant] why he had agreed to go forward with the trial, [Applicant] replied that he "just wanted to get the trial done and over with."

The court observed that defense counsel had a good reputation and that he was dedicated to his job. Defense counsel told the court that he did not feel there was a conflict of interest. In a written order, the court denied [Applicant's] request, stating: "The [Applicant] has failed to show good cause that would justify the appointment of substitute counsel. The Court finds that any disagreements the [Applicant] may have with [defense counsel] pertain only to matters of trial preparation, strategy, and tactics."

[*Hoeck I*, Doc. # 13-2, at 11-15].[5]

The Colorado Court of Appeals found that the trial court properly inquired into

Applicant's reasons for requesting substitution of counsel, but further determined that

any deficiency in the trial court's inquiry did not require reversal.  [*Id.* at 15].  The state

appellate court reasoned:

The record here supports the trial court's conclusion that [Applicant's] dissatisfaction pertained only to matters of trial preparation, strategy, and tactics, because his motion and his statements to the court related to defense counsel's failure to call certain witnesses, ask certain questions, and file particular motions. Furthermore, on the morning of the

---

[5]*See also* State Court R., Court File, 23-25, 103-104; Trial Tr. 2/11/08 Trial Tr.; 2/22/08 Hrg. Tr.

first day of trial, [Applicant] told the court that, although he wanted a different lawyer, he was ready to go forward with trial, thus evidencing an absence of conflict.

Under these circumstances, we conclude that the court did not abuse its discretion in denying [Applicant's] motion for substitution of counsel.

[*Id.* at 16].

"[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The Constitution does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

The Supreme Court has not articulated a standard for deciding a Sixth Amendment claim based on a habeas petitioner's allegation the trial court denied his request for substitute counsel. *See, e.g., Peterson v. Smith*, 510 F. App'x 356, 2013 WL 49565, at *10 (6th Cir. Jan. 3, 2013) (unpublished) (trial court's failure to make sufficient inquiry into a defendant's request for substitute counsel cannot be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent). Accordingly, the state appellate court's resolution of Applicant's claim could not have been contrary to, or an unreasonable application of Supreme Court law. *See Hatch*, 527 F.3d at 1018. Applicant cannot prevail on his second claim unless the state appellate court unreasonably determined the claim in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

The Court of Appeals for the Tenth Circuit has held that to warrant a substitution

16

of counsel under federal law, a defendant "'must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir.1987) (§ 2255 action) (citing *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir.1981)); *see also United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir.1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict). However, here is no absolute right to counsel of one's choice. *See United States v. Peister*, 631 F.2d 658, 661 (10th Cir.1980).

"A complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness." *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000). To prove a complete breakdown in communication, a habeas applicant must demonstrate that there was a severe and pervasive conflict with his attorney, or evidence of minimal contact with the attorney rendering meaningful communication impossible. *See United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). In addition, the federal habeas court must examine the following factors: (1) whether the petitioner made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the petitioner and his trial attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and, (4) whether the petitioner substantially and unjustifiably contributed to the breakdown in communication. *Romero*, 215 F.3d at 1113 (quotation marks and citations omitted). To be entitled to habeas

relief, the "breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation." *Id.* at 1114.

The state court record reflects that Applicant filed a motion alleging the ineffective assistance of his court-appointed counsel in December 2007, approximately two months before trial.  The state appellate court's finding that the trial court properly inquired into the basis for Applicant's motion is a factual finding that is presumed correct, is supported by the state court record,[6] and has not been rebutted by Applicant. Moreover, Applicant's responses to the trial court do not establish a complete breakdown of communication, only that Applicant and trial counsel disagreed about trial strategy and how to proceed with the case.[7]  However, "[t]he Sixth Amendment provides no right to counsel blindly following defendant's instructions." *Padilla,* 819 F.2d at 956 (citing *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.1985)).  In addition, "informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Here, Applicant has made no showing that counsel's decisions concerning the presentation and questioning of witnesses at the preliminary hearing, and decisions concerning the filing of motions, were not based on a valid strategic choice. *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based

---

[6]*See* note 5, supra.

[7]*Id.*

on a valid strategic choice.").

Furthermore, the mere fact that Applicant did not get along with his attorney does not, standing alone, establish a complete breakdown in communication. *See Morris*, 461 U.S. at 13-14. The record fails to demonstrate that any disagreement or hostility between Applicant and his trial counsel "resulted in such deterioration of their attorney-client relationship that it jeopardized Applicant's right to effective assistance of counsel." *Martinez v. Zavaras*, 09-cv-02421, 2011 WL 1527597, at *7 (D. Colo. April 22, 2011) (unpublished).

After carefully reviewing the record, the Court finds that the Colorado Court of Appeals applied the appropriate factors and reached a reasonable decision based on the evidence presented in the state court proceeding. Furthermore, the state appellate court's determination did not run afoul of federal law. Applicant thus is not entitled to habeas relief on his second claim.

**C.      Claims Three through Nine**

In claims three though nine, Applicant challenges the effectiveness of trial counsel's representation under the Sixth Amendment.

To prevail on a claim of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)

(internal quotations omitted). Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693. The likelihood of a different result must be substantial, not just conceivable. *Id.* The Court need not address both prongs of the *Strickland* inquiry if the Applicant's claim fails on one. *Id.* at 697.

With the foregoing legal principles in mind, the Court addresses each one of Applicant's ineffective assistance of trial counsel claims in turn.

### 1. Failure to Interview and Present Testimony of Impeachment Witnesses

For his third claim, Applicant asserts that trial counsel was ineffective in failing to interview and present at trial witnesses whose testimony would have impeached the testimony of prosecution witnesses. [Doc. # 1, at 4-6].

The Colorado Court of Appeals rejected this claim in Applicant's state post-conviction proceeding on the following grounds:

> [Applicant] contends that trial counsel failed to interview critical witnesses who were in his home when the officers arrived who would have corroborated his version of events. The district court found that [Applicant's] motion failed to explain the substance of their testimony, or how that testimony would have led to a different result, and, therefore, the allegation was insufficient to establish prejudice from counsel's

> alleged failure to interview these witnesses. [State case law citation omitted]. We agree with the district court that [Applicant's] allegation lacks the specificity needed to establish prejudice.

[*Hoeck II*, Doc. # 13-3, at 6].

The Court finds that the appellate court's resolution of Applicant's claim was a reasonable application of the prejudice prong of *Strickland*.  Applicant has not identified any evidence that his counsel should have discovered had he conducted a further investigation that would have likely changed the outcome of Applicant's trial.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 31-32 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (an ineffective assistance of counsel claim fails where the petitioner's allegations are conclusory with no supporting facts).   Applicant thus cannot prevail on his third claim.

## 2.   Failure to Investigate Applicant's Competency for Trial

In claim four, Applicant asserts that trial counsel was ineffective in failing to "investigate" Applicant's competency to stand trial in light of his past traumatic head injuries.  [Doc. # 1, at 6-7].

A criminal defendant is incompetent to stand trial if he lacks (1) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or

(2) "a rational as well as factual understanding of the proceedings" against him. *Dusky v. United States*, 362 U.S. 402 (1960); *see also* former § 16-8-102(3), C.R.S. (which applies to Applicant) (articulating similar standard for incompetency).

The state trial court found that Applicant's participation in the trial and communications with the court, including having filed pro se motions with the court to have his counsel removed, indicated that Applicant was capable of understanding the proceedings and communicating with his counsel.[8]  The trial court therefore concluded that because the record refuted Applicant's claims that he was incompetent to stand trial, he failed to establish that he was prejudiced by counsel's failure to investigate his competency.[9]

The Colorado Court of Appeals affirmed the trial court's order denying post-conviction relief because "the record reveals that . . . [Applicant] was competent to stand trial because his interactions with the court demonstrated that he understood the nature of the proceedings" and Applicant's claim "was not specific enough to establish prejudice." [*Hoeck II*, Doc. # 13-3, at 8].

The Court finds that the state appellate court's determination that Applicant failed to establish that he was prejudiced by trial counsel's failure to raise a competency defense comported with *Strickland*.  Applicant does not point to any evidence that he was, in fact, incompetent to stand trial under the applicable legal standard. Accordingly, claim four is without merit.

---

[8] *See* State Court R., Court File, at 235-36.

[9] *Id.* at 236.

### 3.      Failure to Investigate Alternate Defense Strategies

For his fifth claim, Applicant asserts that trial counsel was ineffective in failing to "explore other viable avenues of defense," specifically: (a) Applicant's "state of mind and competency at the time of the alleged defense and during trial"; (b) questions raised by "alibi and corroborating defense witnesses"; and, (c) evidence relating to an alternate suspect. [Doc. # 1, at 7-9].

The state post-conviction court found that trial counsel was not ineffective in failing to raise a competency defense because the trial court had ruled that Applicant was competent to stand trial.[10]  The state post-conviction court rejected the other asserted potential defenses relating to alibis and alternative suspects as conclusory because Applicant had not identified what his alibi was or who the alternative suspect would have been.[11]

The Court of Appeals determined that Applicant failed to establish that he was prejudiced by trial counsel's failure to investigate other defenses because Applicant's motion failed to "identify (1) what defenses counsel could have pursued based on defendant's physical and mental conditions, (2) what defendant's alibi was, or (3) who the alternative suspect was." [*Hoeck II*, Doc. # 13-3, at 9].

The Court finds that the state appellate court resolved Applicant's claim consistent with the *Strickland* standard because conclusory allegations of ineffective assistance of counsel are not sufficient to establish a Sixth Amendment violation.  *See*

---

[10]State Court R., Court File, at 236.

[11]*Id.* at 237.

23

*Cummings*, 506 F.3d at 1228-29, 31-32; *Fisher*, 38 F.3d at 1147.  Applicant thus cannot prevail on claim five.

### 4.     Failure to Involve Applicant in Trial Preparation

In claim six, Applicant asserts that trial counsel was ineffective in failing to: review discovery with Applicant; keep him informed about the progress of the case; and, to discuss trial strategy with him.  [Doc. # 1, at 9-10].

The state post-conviction court found that this claim merely repeated arguments raised by Applicant during trial when he requested appointment of substitute counsel. And, because the court had already held a hearing and addressed these arguments during the trial, it concluded that the record refuted Applicant's allegation that counsel failed to adequately communicate with him.[12]

The Colorado Court of Appeals agreed with the trial court that the claim was adequately addressed during the trial, and, therefore, the court did not err in denying it. [*Hoeck II*, Doc. # 13-3, at 9].

The Court finds that the state appellate court's resolution of Applicant's claim did not run afoul of *Strickland* because Applicant has failed to establish how counsel's alleged failures caused him prejudice.  *See Cummings*, 506 F.3d at 1228-29, 31-32; *Fisher*, 38 F.3d at 1147.  Claim six therefore will be dismissed.

### 5.     Failure to Consult with Expert Witnesses

For his seventh claim, Applicant asserts that trial counsel was ineffective in failing to "consult with expert witnesses in relation to [Applicant] suffering from PCS,

---

[12] *See* State Court R., Court File, at 237.

PTSD, and agoraphobia." [Doc. # 1, at 10-12].

The state post–conviction court rejected this claim because there was no indication that Applicant was incompetent, and Applicant failed to allege how expert testimony would have been useful in his defense.[13]

The Colorado Court of Appeals determined that the trial court did not err in denying Applicant's claim because Applicant did not allege "what information the expert would have provided and how that would have assisted in his defense" and, therefore, Applicant's allegations "were not specific enough to establish prejudice." [*Hoeck II*, Doc. # 13-3, at 8].

Again, the Court finds that the state appellate court's rejection of Applicant's claim as conclusory comported with *Strickland* because Applicant made no showing in the record regarding the content of the potential expert witness testimony. *See Cummings*, 506 F.3d at 1233 (holding that a petitioner's ineffective assistance claim failed to satisfy Strickland's first prong because nothing demonstrated the content of a potential expert's testimony). Applicant thus cannot prevail on his seventh claim.

### 6.    Failure to Object to Testimony

In claim eight, Applicant maintains that trial counsel was ineffective in failing to move to exclude police officer testimony that Applicant did not open his front door for the police and had juveniles exit his home through a window when the police arrived. [Doc. # 1, at 8-14].

The state post-conviction court rejected this argument on the ground that the

---

[13] *See* State Court R., Court File, at 237-38.

evidence was admissible to prove the substantive elements of false imprisonment and obstructing a police officer.[14] *See* § 18-3-303(1), C.R.S. (2011) (person commits false imprisonment when he knowingly confines or detains another without the other's consent under section); § 18-8-104(1)(a), C.R.S. (2011) (person obstructs a peace officer when he knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer).

The state district court concluded, and the state appellate court agreed, that because the officer's testimony was relevant to prove Applicant's commission of the crimes, Applicant could not prove that he was prejudiced by trial counsel's failure to object to the officer's testimony. [*See Hoeck II*, Doc. # 13-3, at 11-12].[15]

The Court finds that the state appellate court's determination comported with *Strickland* and was based on a reasonable determination of the facts in light of the evidence presented at trial.  The state court's conclusion that the evidence was admissible under state law is not reviewable in this federal habeas proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Applicant cannot show prejudice where the trial court would not have sustained an objection by defense counsel to the police officer testimony.  Claim eight therefore will be dismissed.

---

[14] *See* State Court R., Court File, at 238-39.

[15] *See also* State Court R., Court File, at 238-39.

**7.    Cumulative Prejudicial Effect of Counsel's Errors**

For his ninth claim, Applicant asserts that trial counsel was ineffective

based on the cumulative prejudicial effect of counsel's errors.  [Doc. # 1, at 14].

The Colorado Court of Appeals rejected this claim in the state post-conviction

proceeding on the basis that the court "discerns no error concerning his individual

claims, [and therefore] his cumulative error argument necessarily fails." [*Hoeck II*, Doc.

# 13-3, at 12].

Cumulative error is present when the "cumulative effect of two or more

individually harmless errors has the potential to prejudice a defendant to the same

extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002)

(quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc)). "A

cumulative-error analysis merely aggregates all the errors that individually have been

found to be harmless, and therefore not reversible, and it analyzes whether their

cumulative effect on the outcome of trial is such that collectively they can no longer be

determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470).  On federal habeas

review, a cumulative error analysis applies only to cumulative constitutional errors.

*Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct

a cumulative-error analysis is clearly established federal law under § 2254(d)(1).  See

*Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012).  The Tenth Circuit has

indicated, however, that in the context of ineffective-assistance claims, "for AEDPA

purposes, the cumulative-error inquiry is clearly established federal law.  *Id.*; *see also*

*Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]though

27

we have never expressly held . . . that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases).  This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.  The Colorado Court of Appeals determined that Applicant failed to demonstrate any violation of his Sixth Amendment right to the effective assistance of counsel.  This Court has concluded that the state appellate court's resolution of Applicant's ineffective assistance of counsel claims comported with *Strickland*.  As such, there are no constitutional errors for the Court to accumulate.  *See Hooks*, 689 F.3d at 1194-95 (cumulative error "'does not apply . . . to the cumulative effect of non-errors'") (quoting *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (internal quotation marks and citation omitted); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect [of non-errors].").  Because Applicant cannot show that the state appellate court's resolution of his cumulative error claim was contrary to, or an unreasonable application of, clearly established Supreme Court law, federal habeas relief is not warranted for claim nine.

**D.    Claim Ten**

In claim ten, Applicant asserts that the trial court "erred" by allowing the state to introduce, at trial, testimony that he refused to open the door of his home for police officers.  [Doc. # 1, at 14-15].  He contends that such evidence was relevant only to establish his "consciousness of guilt," a purpose he asserts was impermissible. [*Id.*].

As discussed previously, the Colorado Court of Appeals rejected this claim on the ground that the testimony was admissible under state law to prove the substantive elements of the crimes of false imprisonment and obstructing a peace officer. [*Hoeck II*, 13-3, at 11-12].

The Tenth Circuit recently summarized the case law governing § 2254 claims involving the admission of evidence that is alleged to have been so unfairly prejudicial as to violate due process:

> In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." And in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190-1191 (10th Cir. 2013) (parallel citations omitted). *See also Lisenba v. California*, 314 U.S. 219 (1941) ("In order to declare a denial of [due process] we must find that the absence of [fundamental] fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.")

The evidence was properly admitted under Colorado law to prove the elements of the crimes and was necessary to support the prosecution's burden of proof. "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003) (internal quotation marks and citation omitted); *see also United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir.2008).  Applicant has not established that he was unfairly prejudiced by the admission of the testimony.  Accordingly, the Court finds that the state appellate court's

29

decision was a reasonable application of the generalized due process standard articulated in *Payne* and *Lisenba*.  *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that "[t]he more general the rule" at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—"the more leeway [state] courts have in reaching outcomes in case-by-case determinations."). Claim ten therefore will be dismissed.

### E.   Claim Eleven

For claim eleven, Applicant assert that appellate counsel was ineffective in failing to seek certiorari review in the Colorado Supreme Court of the Colorado Court of Appeals' decision on direct appeal. [Doc. # 1, at 15-16].

Review by the Colorado Supreme Court is discretionary.  *See People v. Valdez*, 789 P.2d 406, 408 (Colo. 1990) (recognizing that the Colorado Supreme Court "has absolute discretion to grant or to deny a petition for writ of certiorari to review a final judgment of a lower tribunal.").  The United States Supreme Court has held that a criminal defendant has no constitutional right to court-appointed counsel to pursue discretionary review in a state supreme court.  *See Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974).

The Colorado Court of Appeals analyzed Applicant's claim under the *Strickland* standard, and determined that because Applicant's state post-conviction motion "does not allege any recognized basis for the supreme court to accept the case," the state district court properly denied relief.  [Doc. # 13-3, at 13].

The Court finds that the state appellate court's resolution of Applicant's claim was

30

not contrary to, or an unreasonable application of, federal law.  Although the Colorado

Court of Appeals did not apply the applicable federal standard, the result comports with

*Ross v. Moffitt*.  As such, Applicant cannot prevail on his eleventh claim for relief.  *See*

*Harrington*, 131 S.Ct. at 784-85; *Aycox*, 196 F.3d at 1177.

## V.    ORDERS

Accordingly, it is ORDERED:

1.      Applicant David B. Hoeck's pro se Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 [Doc. # 1] is DENIED and this case is

DISMISSED on the merits.

2.      No certificate of appealability will issue because Applicant has not made a

substantial showing that jurists of reason would find it debatable whether the

jurisdictional and procedural rulings are correct and whether the Application states a

valid claim of the denial of a constitutional right.

3.      The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal

from this order would not be taken in good faith, *see Coppedge v. United States*, 369

U.S. 438 (1962), and therefore *in forma pauperis* status is DENIED for the purpose of

appeal.  If Applicant files a notice of appeal he must also pay the full $455 appellate

filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 19th day of September, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge